**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELLE IAPICHINO, *Plaintiff*, v. HACKENSACK UNIVERSITY MEDICAL CENTER, et al., *Defendants*. | Civil Action No. 17-6521 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case concerns allegations that Defendants Hackensack University Medical Center ("HUMC") and Hackensack Meridian Health, Inc.'s decision to terminate Plaintiff Michelle Iapichino violated Plaintiff's rights under the Family Medical Leave Act ("FMLA") and the New Jersey Law Against Discrimination ("LAD"). Currently pending are the parties' motions for summary judgment. Plaintiff filed a motion for partial summary judgment as to her claims for FMLA interference and liquidated damages under the FMLA. D.E. 36. Defendants filed a motion for summary judgment that seeks to dismiss Plaintiff's case in its entirety. D.E. 39. The Court reviewed all submissions[1] made in support and in opposition to the motions and considered the

---

[1] In this opinion, Plaintiff's brief in support of her motion for partial summary judgment (D.E. 36-2) shall be referred to as "Plf. Br."; Defendants' brief in support of their motion for summary judgment (D.E. 39-1) shall be referred to as "Defs. Br."; Plaintiff's brief in opposition (D.E. 45) shall be referred to as "Plf. Opp."; Defendants' brief in opposition (D.E. 48) shall be referred to as "Defs. Opp."; Plaintiff's reply brief (D.E. 50) shall be referred to as "Plf. Reply"; and Defendants' reply brief (D.E. 51) shall be referred to as "Defs. Reply".

motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons stated below, Plaintiff's motion is **DENIED** and Defendants' motion is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff was a registered nurse and supervisor at HUMC.  PSOMF ¶ 1; DSOMF ¶¶ 4-5.  On November 25, 2015, a manager at work, Lisa Archer, noted that Plaintiff "did not 'look good.'"  PSOMF ¶ 22, DSOMF ¶ 18.  Ms. Archer observed that Plaintiff had slurred speech, appeared "out of it," and had fallen asleep during a meeting the previous day.  DSOMF ¶¶ 18-19.  Ms. Archer reported Plaintiff's behavior to Plaintiff's supervisor, Kelly Briggs.  *Id.* ¶ 19.  Per HUMC's Reasonable Suspicion Policy, Plaintiff was "escorted to Occupational Medicine for suspicion of impairment on duty" and was required to take a drug test.  *Id.* ¶ 17; PSOMF ¶ 22; Lario Cert. Ex. 10.  The Reasonable Suspicion Policy is part of HUMC's Drug/Alcohol-Free Workplace Policy (the "Policy"), which provides that "[e]mployees who violate this policy will be subject to disciplinary action up to and including termination."  Lario Cert. Ex. 8.  Per the Policy, "[a]n employee who is reasonably suspected to be under the influence of drugs/alcohol while on duty . . . will be escorted to the Center for Occupational Medicine" for medical tests to determine the presence of drugs or alcohol.  *Id.*

Plaintiff was placed off duty immediately after taking the drug test.  PSOMF ¶ 23.  On November 30, 2015, HUMC received the drug test results, which indicated that Plaintiff tested positive for Suboxone, Klonopin, and marijuana.  DSOMF ¶ 21.  Plaintiff did not have a

---

[2] The background facts are drawn from Plaintiff's statement of undisputed material facts ("PSOMF"), D.E. 28, and Defendants' response, D.E. 29-1; Defendants' statement of undisputed material facts ("DSOMF"), D.E. 30-1, and Plaintiff's response, D.E. 31-2; Plaintiff's supplemental statement of undisputed facts ("Supp. PSOMF"), D.E. 31-1; the Certification of Wendy Johnson Lario ("Lario Cert.") and supporting exhibits, D.E. 39-2; and the Affidavit of Gregory B. Noble ("Noble Aff.") and supporting exhibits, D.E. 45-1.

prescription for Suboxone or marijuana. *Id.* ¶ 22.

Plaintiff initiated the medical leave process on November 30, 2015 with HUMC's third-party benefits administrator. PSOMF ¶ 23. While it is unclear exactly when HUMC was notified about Plaintiff's request for leave, Plaintiff received a letter from HUMC on December 10, 2015 acknowledging that Plaintiff initiated the leave process on November 30, and that her anticipated return to work date was December 14, 2015. Noble Aff. Ex. H. In addition, Ms. Archer recalls having a conversation with the third-party administrator about Plaintiff's leave request prior to Plaintiff's termination. Supp. PSOMF ¶ 24.

On December 3, 2015, HUMC decided to terminate Plaintiff. HUMC determined that "[a]s a result of the Occupational Medicine's findings, [Plaintiff] has been deemed not fit for duty." Lario Cert. Ex. 9. The Disciplinary Action Notice, which explained the reason for Plaintiff's termination, was signed by Ms. Archer, and Supervisor Briggs. *Id.* Plaintiff was not immediately notified of this decision. Plaintiff, however, did not return to work on December 14, 2015 as anticipated, and HUMC believes that it was advised that Plaintiff did not file an extension of leave.[3] DSOMF ¶ 30. On December 15, 2015, Plaintiff was terminated through a letter, effective immediately. Lario Cert. Ex. 20.

Plaintiff has a history of psychiatric conditions and began receiving treatment for generalized anxiety disorder in 2011. PSOMF ¶ 11. In addition, sometime between April 2011 and December 1, 2015, Plaintiff was diagnosed with depression. *Id.* ¶ 13. During the time frame at issue, Plaintiff had prescriptions for various medications for her treatment, including a prescription for Klonopin. *Id.* ¶ 11. It does not appear, however, that Plaintiff sought treatment

---

[3] Plaintiff denies that HUMC was informed that Plaintiff did not request an extension of leave. The Court notes, however, that it appears that the documents supporting Plaintiff's request for leave past December 13, 2015 were submitted on December 17, 2015. Noble Aff. Ex. J.

for her illegal drug use until she was admitted to an inpatient rehabilitation facility for detoxification on December 5, 2015.  Noble Aff. Ex. L.  In addition, Plaintiff alleges that she reported her anxiety and depression conditions to her supervisors at HUMC.  DSOMF ¶¶ 16-18. But Plaintiff did not disclose her illicit drug use until after she was required to submit to the reasonable suspicion drug test.[4]  Supp. PSOMF ¶ 71.

Plaintiff initially filed her Complaint in state court, asserting failure to accommodate and disability discrimination claims under the LAD, in addition to FMLA retaliation and interference claims.  Plaintiff also sought liquidated damages under the FMLA.  Defendants removed the matter to this Court on August 29, 2017.  D.E. 1.  On December 11, 2019, the parties were granted leave to file motions for summary judgment.  D.E. 35.  Plaintiff seeks summary judgment for her FMLA interference and liquidated damages claims.  D.E. 36.  Defendants seek summary judgment dismissing the matter in its entirety.  D.E. 39.

## II.     SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment.  *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving

---

[4] The Court addresses additional, relevant facts in the analysis section below.

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.  "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

#### 1. LAD Claim

The LAD makes it illegal

> [f]or an employer, because of the race, creed, color, national origin, ancestry, age . . . disability . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]

N.J.S.A. 10:5-12(a). Where a plaintiff does not present direct evidence of discrimination, courts apply the three-step, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this burden-shifting framework, a plaintiff must first establish a *prima facie* case of discrimination." *Palatnik v. Home Depot, Inc.*, No. 04-1229, 2006 WL 680981, at *8 (D.N.J. Mar. 10, 2006). If a plaintiff puts forth a *prima facie* case, there is a rebuttable presumption of unlawful discrimination. To rebut this presumption at the second step, a defendant must produce evidence of a legitimate, non-discriminatory reason for its decision. *Id.* At the third step, a plaintiff must prove, by a preponderance of the evidence, that the employer's articulated reason was not the real reason for the employment action but rather was a mere pretext for discrimination. *Id.* In addition, Plaintiff's LAD claim encompasses an allegation that Defendants failed to accommodate Plaintiff's disability, which also requires that Plaintiff establish a *prima facie* claim. *Bosshard v. Hackensack Univ. Med. Ctr.*, 345 N.J. Super. 78, 91 (App. Div. 2001).

To establish a *prima facie* LAD discrimination claim, a plaintiff must show that she (1) is a member of a designated protected class; (2) was qualified for and performing the essential functions of the job; (3) suffered termination or adverse employment action; and (4) others not in the protected class did not suffer similar adverse employment decisions. *Victor v. State*, 203 N.J. 383, 408-09 (2010). To set forth a *prima facie* failure to accommodate claim, a plaintiff must

6

prove that the employee (1) had a LAD handicap; (2) was qualified to perform the essential functions of the job, with or without an accommodation; and (3) suffered an adverse employment action because of the handicap. *Bosshard*, 345 N.J. Super. at 88.

Defendants contend that Plaintiff cannot establish a *prima facie* claim under the LAD because "use of illegal substances is not a qualifying disability." Defs. Br. at 11. Plaintiff counters that Defendants improperly focus on her drug use and fail to consider her psychiatric conditions. Plf. Opp. at 12. The Court agrees. Plaintiff sufficiently establishes that she suffered from depression and anxiety, PSOMF ¶¶ 8, 10-11, and that her drug use stemmed from these conditions, *id.* ¶ 13. Psychiatric disorders, including depression and anxiety qualify as a handicap under the LAD. *See Domurat v. CIBA Speciality Chems. Corp.*, 353 N.J. Super. 74, 89-90 (App. Div. 2002). Therefore, Plaintiff establishes that she had a disability under the LAD due to her psychiatric conditions and the Court does not need to reach whether Plaintiff's drug use alone constitutes a disability under the LAD. Defendants do not address the remainder of Plaintiff's *prima facie* claim for disability discrimination or failure to accommodate under the LAD. As a result, the Court presumes, for purposes of this Opinion, that Plaintiff sets forth a *prima facie* LAD claim.

A defendant's burden of production at the second step of the *McDonnell Douglas* framework is minimal. Namely, an employer's explanation for the adverse employment action must simply "permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Howard v. City of Monmouth*, No. 16-5524, 2019 WL 2710791, at *5 (D.N.J. June 28, 2019) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). Defendants do so here. Defendants contend that Plaintiff was fired because of her on-duty impairment and positive drug test for illegal and non-prescribed substances. DSOMF ¶ 3; Lario Cert. Ex. 9. Thus,

a reasonable jury could conclude that this is evidence of a legitimate, non-discriminatory reason for terminating Plaintiff.

At the third step, Plaintiff attempts to attack the factual support behind HUMC's proffered reason for her termination. To successfully do so, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Howard*, 2019 WL 2710791, at *5 (quoting *Fuentes*, 32 F.3d at 765). Here, Plaintiff points to her supervisors' statements that they did not recall Plaintiff being impaired at work. Supp. PSOMF ¶¶ 51-58. While this may be true, it does not change the fact that Plaintiff tested positive for unprescribed and illegal drugs through a drug test that was administered during work hours on November 25, 2015. DSOMF ¶¶ 21-22; Noble Cert. Ex. H. Plaintiff does not deny that this occurred. PSOMF ¶ 13.

In addition, Plaintiff does not contest that the drug test was administered pursuant to the Policy. Instead, Plaintiff argues that Defendants selectively enforced the Policy as to her. Plf. Opp. at 16. The Policy provides that reporting to work under the influence of drugs or alcohol is strictly prohibited and "[e]mployees who violate this policy will be subject to disciplinary action up to and including termination." Lario Cert. Ex. 8. Plaintiff relies on Ms. Archer's statement that each positive drug test is "handled in its own unique way" and that "there have been cases where an employee has a positive drug test and has not been terminated." Supp. PSOMF ¶ 65. But the Policy does not require that an employee be terminated if there is a positive drug test. Lario Cert. Ex. 8. Moreover, Plaintiff fails to provide any details by which a jury could infer that the Policy was actually applied differently to her. The most Plaintiff provides is that Ms. Archer sent two or three others for drug tests that resulted in a positive test and that Ms. Archer does not recall that

these other individuals were terminated. Supp. PSOMF ¶ 69. Critically, Ms. Archer believes that the others self-reported their drug additions, which provides employees with certain job protections,[5] *id.* ¶ 70, or that they left HUMC on their own accord, Archer Dep. 52:3-6. Accordingly, Plaintiff fails to provide any examples of a similarly situated nurse who was not terminated after a positive reasonable suspicion drug test. As a result, Plaintiff offers no evidence by which a reasonable jury could determine that HUMC's stated reason for the termination was a pretext. Defendants' motion for summary judgment, therefore, is granted as to the LAD claims.

### 2. FMLA Claims

Among other things, the FMLA permits eligible employees to take up to twelve weeks of leave during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA prohibits employers from interfering with, restraining, or denying an employee's entitlement to leave under the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA creates two types of claims: interference claims and retaliation claims. Plaintiff asserts both.

### a. FMLA Retaliation

FMLA retaliation claims are also assessed under the *McDonnell Douglas* burden-shifting framework. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 151 (3d Cir. 2017). A plaintiff

---

[5] According to the Policy, an employee can "voluntarily identify themselves as having a drug and/or alcohol problem prior to being requested to submit to reasonable suspicion testing." Lario Cert. Ex. 8. Doing so may provide the employee with an opportunity to take a leave of absence to successfully participate in a rehabilitation program. But "[e]mployees may not use this self-identification provision to avoid taking a test when required under this policy or to avoid being disciplined for receiving a positive test result or for refusing to submit to a test." *Id.* Here, although Plaintiff admitted prior to the drug test that "it was going to be positive," this acknowledgement occurred *after* Plaintiff had already been required to submit to reasonable suspicion testing. PSOMF ¶ 71. Thus, Plaintiff did not self-report under the Policy. Instead, she predicted a positive test once the Policy was invoked.

establishes a *prima facie* discrimination claim by demonstrating that: (1) she invoked her right for FMLA leave; (2) suffered an adverse employment action; and (3) the adverse action was causally related to the plaintiff's exercise of her FMLA rights. *Id.* at 152 n.6.

Defendants first argue that Plaintiff cannot establish a *prima facie* case because Mss. Archer and Briggs decided to terminate Plaintiff before Plaintiff requested FMLA leave. Defs. Br. at 13. To invoke FMLA leave, employees "must provide adequate notice to their employer about their need to take leave." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012). If the leave was unforeseeable, the employee must "provide sufficient information for an employer to reasonably determine whether the FMLA *may* apply to the leave request." *Id.* (quoting 29 C.F.R. § 825.303(b)).

As discussed, Plaintiff was immediately placed on leave after her reasonable suspicion drug test on November 25. PSOMF ¶¶ 13-14. Although it is not clear what steps Plaintiff actually took to request leave, HUMC's December 10, 2015 letter acknowledges that Plaintiff initiated her request for leave on November 30, 2015. Noble Aff. Ex. H. And Defendants did not decide to terminate Plaintiff until December 3, 2015. DSOMF ¶ 23. Moreover, Ms. Archer, recalls getting information about Plaintiff's medical leave from Defendants' third-party benefits administrator prior to Defendants' decision to terminate. Supp. PSOMF ¶ 24. And Ms. Archer was involved in the decision to terminate, as Ms. Archer signed the December 3 Disciplinary Action Notice indicating that Plaintiff was terminated. DSOMF ¶ 23. Consequently, there is sufficient evidence in the record for a reasonable jury to determine that Plaintiff invoked her right to FMLA leave prior to her termination.

Like the LAD claim, Defendants do not challenge the remaining elements of Plaintiff's *prima facie* FMLA retaliation claim. Thus, the Court again assumes, for purposes of the current

motion, that Plaintiff establishes a *prima facie* claim and turns to the second step of the *McDonnell Douglas* framework.

As discussed, an employer's burden is "relatively light" at the second step. *See Fuentes*, 32 F.3d at 763. Here, Defendants explain that Plaintiff was terminated pursuant to the Policy, which it was expressly permitted to do under the FMLA. Defs. Br. at 13-14. The FMLA provides that

> [t]reatment for substance abuse does not prevent an employer from taking employment action against an employee. The employer may not take action against the employee because the employee has exercised his or her right to take FMLA leave for treatment. However, if the employer has an established policy, applied in a non-discriminatory manner that has been communicated to all employees, that provides under certain circumstances an employee may be terminated for substance abuse, pursuant to that policy the employee may be terminated whether or not the employee is presently taking FMLA leave.

29 C.F.R. § 825.119(b). For example, in an Advisory Opinion, the Department of Labor explained that if an employee tests positive for illegal narcotics through a drug test that was required by a workplace policy and the policy permitted termination for a positive test, that employee could be terminated immediately after receiving the positive test result. "FMLA does *not* require the [employer] to allow the employee the opportunity to seek treatment and be reinstated." DOL Wages & Hours, 1995 WL 18228691, 95-999 CCH-WH ¶ 32,351 (Apr. 28, 1995).

Here, the Policy expressly provides that reporting to work under the influence of drugs or alcohol is strictly prohibited and that employees who violate the Policy may be terminated. Lario Cert. Ex. 8. Defendants contend that Plaintiff was terminated because of this Policy, before Plaintiff was even entitled to take leave under the FMLA. Thus, Defendants' decision to terminate Plaintiff pursuant to the Policy without providing Plaintiff leave under the FMLA cannot amount to an FMLA retaliation claim, meaning that Defendants' have met their burden of production at

11

the second step.

Plaintiff again argues that Defendants' reason for her termination is pretextual because Defendants selectively applied the Policy. Plf. Opp. at 26. But for the same reasons addressed above regarding Plaintiff's LAD claim, Plaintiff fails to provide sufficient evidence by which a reasonable jury could conclude that Plaintiff was actually treated differently than other similarly situated employees. Because Plaintiff cannot rebut Defendants' legitimate and nondiscriminatory reason for her termination, Plaintiff cannot establish an FMLA retaliation claim. Consequently, Defendants' motion for summary judgment is granted as to this claim.

### b. FMLA Interference

An FMLA interference claim is intended to prohibit employers from interfering with their employee's FMLA rights, including the right to leave and reinstatement. To recover, a plaintiff must first establish a *prima facie* claim by demonstrating the following:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Capps*, 847 F.3d at 155. Unlike an FMLA retaliation claim, a plaintiff need not show any discriminatory intent; an interference claim only requires proof that the employer denied the employee her FMLA rights. *Id.* Plaintiff refers to this as "a strict liability standard." Plf. Br. at 10-11.

Defendants argue that Plaintiff, among other things, cannot establish that she was entitled to any FMLA benefits. Although Defendants acknowledge that substance abuse can qualify as a serious health condition under the FMLA, Defendants contend that Plaintiff is not entitled to FMLA protections because she violated HUMC's internal policies before taking FMLA leave for

12

her substance abuse. Defs. Br. at 17.

An individual may be entitled to FMLA leave because of a "serious health condition," which requires either inpatient care or "continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11). Treatment for substance abuse can qualify as a serious health condition if certain requirements are satisfied. *See* 29 C.F.R. § 825.119(a). To qualify, the condition must require "inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." *Id.* The continuing treatment category requires a period of incapacity, which is defined as the inability to work due to the health condition, treatment, or recovery. 29 C.F.R. §§ 825.113(b); 825.115.

*Ames v. Home Depot*, 629 F.3d 665 (7th Cir. 2011) is instructive. The plaintiff in *Ames* was required to submit to a blood alcohol test when her manager suspected that she was intoxicated while at work. After the blood test indicated that she was intoxicated, the defendant decided to terminate the plaintiff because she violated the defendant's substance abuse policy. *Ames*, 629 F.3d at 668. The Seventh Circuit upheld the district court's conclusion that the plaintiff did not establish an FMLA interference claim because the plaintiff failed to establish that she suffered from any period of incapacity as required by 29 C.F.R. § 825.115. *Id.* at 669. In addition, the plaintiff did not satisfy the inpatient care requirement because she did not check herself into a hospital for treatment until more than a week after she was terminated for violating her employer's substance abuse policy. *Id.*

In this instance, Plaintiff took the reasonable suspicion drug test while at work on November 25, 2015. PSOMF ¶¶ 13-14. On November 30, 2015, Plaintiff initiated her request for leave. PSOMF ¶ 14. Plaintiff, however, was not admitted to an inpatient treatment facility until December 5, 2015. Noble Aff. Ex. L. Thus, it appears that Plaintiff was not entitled to FMLA

leave until December 5, the day she was admitted for inpatient treatment. 29 C.F.R. § 825.114. But because of her positive drug test, Defendants determined that Plaintiff was "deemed not fit for duty" and decided to terminate Plaintiff on December 3, 2015. Lario Cert. Ex. 9. This decision occurred before Plaintiff was entitled to FMLA leave.

Plaintiff counters that Defendants improperly focus on Plaintiff's substance abuse while ignoring the extent of her other mental health conditions. Plf. Opp. at 20. Plaintiff continues that Defendants were aware of these other conditions during the time period in question and that "each of her disorders would independently qualify for the medical leave that plaintiff requested." *Id.* at 21. Mental illness can qualify as a serious health condition if the plaintiff meets the requirements of 29 C.F.R. § 825.113. Although Plaintiff demonstrates that that she suffered from multiple psychiatric conditions, she fails to establish that they constitute a serious health condition that would entitle her to FMLA leave. As discussed, to be a serious health condition, an individual must either require inpatient treatment or continuing treatment by a healthcare provider. 29 C.F.R. § 825.113(a). As discussed, Plaintiff was not admitted for inpatient treatment until December 5, which occurred after Defendants decided to terminate Plaintiff. Thus, Plaintiff must establish that she was receiving continuing treatment by a healthcare provider for her psychiatric conditions to constitute a serious health condition.

To do so, Plaintiff must provide evidence indicating that she had a period of incapacity, which is defined as the inability to work due to the health condition, treatment or recovery. 29 C.F.R. §§ 825.113(b); 825.115. Plaintiff fails to establish that there was any period of incapacity for any of her other conditions prior to her positive drug test on November 25.[6] Moreover, after

---

[6] Plaintiff demonstrates that she had been seeing a medical professional for psychiatric treatment since at least April 2011. *See* PSOMF ¶ 8. In addition, Defendants acknowledge that Plaintiff previously took FMLA leave on four separate occasions. Lario Cert. Ex. 19. Plaintiff, however,

November 25, Plaintiff was placed off-duty so she cannot establish that she was medically unable to work during this time. But ultimately, Plaintiff only points to her treatment that began on or about December 5, 2015. PSOMF ¶¶ 15-17, Noble Aff. Ex. L. This is insufficient to establish that Plaintiff was entitled to FMLA leave when she initiated the leave process on November 30. Consequently, Plaintiff fails to demonstrate that she was entitled to FMLA leave for any of her health conditions when Defendants decided to terminate Plaintiff. Plaintiff, therefore, cannot establish a *prima facie* FMLA interference claim.

In addition, even if Plaintiff did have a serious health condition that entitled her to leave under the FMLA, Defendants were permitted to terminate Plaintiff for violating the Policy. Again, treatment for substance abuse does not prevent an employer from taking employment action against an employee pursuant to an established policy that is applied in a non-discriminatory manner. 29 C.F.R. § 825.119(b). As discussed, Plaintiff was terminated per the Policy, and Plaintiff fails to provide sufficient evidence demonstrating that the policy was applied to her in a discriminatory manner.

Finally, even assuming that Plaintiff was entitled to FMLA leave, Plaintiff does not establish that Defendants interfered with her requested leave. Plaintiff initially requested FMLA leave through December 13, 2015, with an anticipated return to work date of December 14, 2015. Supp. PSOMF ¶ 26. And Plaintiff was terminated on December 15, 2015. Lario Cert. Ex. 20. Although Plaintiff remained in treatment after December 14, there is no indication that this

---

does not establish that the prior leave is related to the mental health conditions at issue here. Rather, Plaintiff contends, without any factual support, that she had "extensive inpatient and outpatient medical treatment for such issues in the years prior to her leave request." Plf. Opp. at 21. But without evidence about Plaintiff's earlier leave, the Court cannot determine that she had a serious health condition that would entitle Plaintiff to FMLA leave during the time period at issue.

information was conveyed to Defendants, or HUMC's third-party claims administrator before Plaintiff's termination. In fact, HUMC contends that it was advised that Plaintiff did not file an extension of leave on December 14. DSOMF ¶ 30. In addition, it appears that the documents supporting Plaintiff's request for leave past December 13, 2015 were submitted on December 17, 2015. Noble Aff. Ex. J. Thus, with the information provided to Defendants at the time, HUMC terminated Plaintiff after her requested period of leave ended.

In sum, Plaintiff does not provide evidence demonstrating that she was entitled to FMLA leave before Defendants decided to terminate her, or that Defendants actually interfered with her FMLA rights, assuming that Plaintiff was even entitled to such leave. Therefore, Plaintiff's motion for summary judgment is denied as to her interference claim, and Defendants' motion is granted.

### c. Liquidated Damages

Finally, Plaintiff seeks summary judgment for her claim for liquidated damages under the FMLA. A prevailing employee under the FMLA may be entitled to actual and liquidated damages from the offending employer. *See* 29 U.S.C. § 2617(a)(1)(A)(iii) (setting forth damages for which an employer may be liable if it violates Section 2615). However, as noted, Defendants' motion for summary judgment is granted as to both of Plaintiff's FMLA claims and these claims are dismissed. Thus, Plaintiff is not entitled to any damages under the FMLA, and Plaintiff's motion for partial summary judgment is denied as to her claim for liquidated damages.

## IV. CONCLUSION

For the reasons states above, Plaintiff's motion for partial summary judgment (D.E. 36) is **DENIED** and Defendants' motion for summary judgment (D.E. 39) is **GRANTED**. An appropriate order accompanies this Opinion.

Dated: September 15, 2020

                                                                  _____
                                                                  John Michael Vazquez, U.S.D.J.